## THWEATT v. HOWARD.

### Opinion delivered November 17, 1900.

1. TAX-SALE—NOTICE.—Publication of the list of delinquent lands for eleven days before the day of sale is not a compliance with the statute which requires that such list shall be published "weekly for two weeks" (Sand. & H. Dig., § 6605). (Page 429.)

2. CONFIRMATION OF TAX TITLE—PRACTICE.—To entitle one not in adverse possession to oppose the confirmation of a tax title, it is sufficient for him to allege and prove such a state of facts as will show that he might in good faith claim some interest in or right to the land. (Page 430.)

3 CONSTITUTIONAL LAW—SALE OF STATE LANDS DURING WAR.—If the intent of the act of March 23, 1871, which provides "that all lands claimed, held or occupied under any pretended sale [by the pretended authorities of the state after the 5th day of May, 1861, and before the 18th day of April, 1864] shall be sold and disposed of as other state lands," was absolutely to annul all sales between the dates named, the act is void. (Page 431.)

Appeal from Prairie Circuit Court in Chancery.

JAMES S. THOMAS, Judge.

*Rose, Hemingway & Rose,* for appellants.

One who has no interest in land can not contest a petition for the confirmation of a tax title thereto. 1 Ark. 472;

Sand. & H. Dig., § 627. Appellees' claim is based upon a fraudulent entry under the swamp land act (Gould's Dig. chap. 101, § 15, as amended by act February 8, 1859), and hence void. By issuing a subsequent patent to another claimant, the land department adjudged appellees' entry void; and, until this ruling is reversed by the courts, it must stand. 171 U. S. 93, 99; 7 Wheat. 218; 163 U. S. 321, 323; 169 U. S. 363; 34 Ark. 213; 24 Ark. 40; 31 Ark. 426. The act of March 23, 1871, is valid. 95 U. S. 628; 104 *id.* 668; 137 *id.* 246; 168 *id.* 90. There would be no valid conveyance of the patented property before the issuance of the patent. 34 Ark. 762; 47 *id.* 357; 64 *id.* 361.

*Eugene Lankford,* for appellees.

The sale was void because the record showed publication of the notice of sale for only eleven days, instead of two weeks, before the sale. Sand. & H. Dig., § 6605; 30 Ark. 661; 55 Ark. 192; 55 Ark. 213; Black, Tax Titles, 83; Cooley, Taxation, 335. Any right, title or interest, whether legal or equitable, vested or inchoate, is sufficient to entitle one to redeem from a tax sale or contest its confirmation. Black, Tax Titles, 189; 10 L. R. A. 292; Cooley, Taxation, 366; 39 Ark. 580; 1 Ark. 472. No one but the state had the right to complain that the parties who made first entry did not comply with the law. 36 Ark. 471; 41 Ark. 465; 31 Ark. 279; 54 Ark. 251; 47 Ark. 199; 1 N. Dak. 284; 19 Am. & Eng. Enc. Law, 19, 300. When the lands were paid for, and the certificates of purchase issued, the equitable title and the control of the land passed out of the state, and could not be re-vested by any act of its officers. 46 Ark. 18; 21 Ark. 240; 9 How. 328; 20 Am. Dec. 490; 30 Ark. 761; 19 Am. & Eng. Enc. Law, 334; 24 Ark. 448; 26 Ark. 60; 36 Ark. 334; 49 Ark. 87; 44 Ark. 452; 1 Ind. 343. The acts of the officers of the land department in passing upon questions of fact are conclusive. 24 Ark. 431; 8 Ark. 328; 24 Ark. 40; *id.* 402; 142 U. S. 162; 139 U. S. 508; 125 U. S. 625; 163 U. S. 321; 46 Ark. 18, S. C. 20 Am. Dec. 490. But, after the entry is once made, the officers of the land department cannot set aside or cancel such entry and re-sell the land. 44 Ark. 455; 21 Ark. 240;

49 Ark. 87; 42 Ark. 170; 147 U. S. 165; 171 U. S. 93; 25
Kas. 340; 13 Wall. 72; 91 U. S. 330; 2 Wall. 605; 78 Wis.
501; 128 U. S. 456; 106 U. S. 447; 41 Mich. 423; 6 Wall.
409; 30 Kas. 67; 34 Fla. 130; 142 U. S. 161.    The acts of
the different departments of the governments of the seceded
states, relating to their own affairs and not impairing the
authority of the general government, are valid and obligatory.
24 Ark. 286; 29 Ark. 414; 30 Ark. 198; id. 761; 37 Ark.
110; 7 Wall. 700; 15 id. 429; 17 id. 570; 96 U. S. 192; 97
U. S. 454; 106 Cal. 486.    The patent relates back to the date
of the entry.    6 Wall. 402; 13 Wall. 92; 32 Fed. 195; 21
How. 228.

BATTLE, J.    Appellants brought this action in the Prairie
circuit court to confirm the title to certain lands, acquired under
a sale thereof that was made for the purpose of collecting the
taxes assessed against them for the year 1890; describing the
lands in their petition, and alleging that they had been pur-
chased at the tax sale by the Hammett Grocer Company,
which had sold to George C. Cooper, who had sold to petitioners,
the appellants.    Appellees answered the petition of the appel-
lants, and claimed a part of the lands purchased at the tax
sale, and traced their title to the same through various persons
to the state of Arkansas; the purchases from the state by the
persons through whom they claim title being made in 1862.
They also alleged that the lands in controversy were not adver-
tised to be sold for the taxes of 1890 by weekly publications in
a newspaper for two weeks between the second Mondays in
May and June, 1891, as required by law, and that the sale of
the lands for such taxes was consequently void.    The appel-
lants replied to the answer, and alleged that the purchases from
the state or entries through which the appellees claim title were
illegal and fraudulent; that the parties claiming under said pur-
chases failed to comply with an act entitled "An act to define
the condition of certain state lands, and for other purposes,"
approved March 23, 1871; that the said purchases or entries,
by reason of such failure, became void on the 31st day of
March, 1872; and that, on the first day of April, 1872, D. C.
Duell entered the lands in controversy in the land office of the

state, and received a certificate of purchase, which he afterwards assigned to B. D. Williams, to whom the state of Arkansas issued a patent therefor, and that Williams afterwards conveyed the lands to the Hammett Grocer Company, which conveyed them to George C. Cooper, who conveyed to appellants.

Evidence was adduced at the hearing of this cause tending to prove that the lands in controversy were purchased by various persons from the state of Arkansas in the year 1862, and were conveyed by them to other persons, and by them and others, through deeds and a will, to the appellees; that D. C. Duell entered these lands as swamp lands, in the land office of the state, on the first day of April, 1872, and received a certificate of purchase, and afterwards assigned it to B. D. Williams, to whom the state of Arkansas issued a patent; that Williams afterwards conveyed the lands to the Hammett Grocer Company, and it conveyed them to George C. Cooper, and he conveyed to appellants. Evidence was also adduced for the purpose of showing that the lands were never occupied by the persons who entered them in 1862, and that there were no ditches on them in 1862, 1865 and 1866, and in those years there were no indications that any ditches had been made on them; and it was proved that the list of lands returned delinquent on account of the non-payment of the taxes of 1890, of which the lands in controversy were a part, was not - published weekly for two weeks between the second Monday in May and the second Monday in June, and was published only eleven days.

The circuit court did not decide whether the appellees had a valid claim, but found that the sale of the lands for the taxes of 1890, which appellants asked the court to confirm, was void, and refused to confirm the same as to the lands in controversy, because only eleven days' notice .of the sale was given; and, finding that the petitioners and their grantors paid a certain sum as taxes, interest and costs, for which the lands were chargeable, declared it a lien upon them, and ordered the lands sold to pay the same. No order was made as to the lands which were not in controversy. Petitioners appealed.

The list of lands returned delinquent on account of the non-payment of the taxes of 1890, of which the lands in ques-

tion were a part, was not published in the manner prescribed by law. This rendered the sale which the appellants asked the court to confirm null and void. *Pennell* v. *Monroe*, 30 Ark. 661; *Townsend* v. *Martin*, 55 Ark. 192; *Martin* v. *McDiarmid*, 55 Ark. 213.

Should the sale have been confirmed, notwithstanding its nullity? In speaking of what shall be done in the hearing of a petition for confirmation of sales, the statutes say: "On the trial of the cause, the petitioner shall exhibit to the court the tax receipts showing the payment of the taxes for at least three successive years and the deed or deeds under which he claims title, or the record thereof, or a certified copy or copies of the record, and oral or written proof by one or more witnesses acquainted with the lands, showing that no one is in possession claiming adversely to the petitioner.   *   *   *   If the deed or deeds are in proper legal form and properly executed, and the tax receipts show payment of the taxes, and if the evidence shows that no one is in possession adverse to the petitioner, then, in case no one has appeared to show cause against the prayer of the petition, the petition shall be taken as confessed, and the court shall render final decrees confirming the sale in question. In case any person or persons claiming title to the land oppose the confirmation of sale, then the court shall try the validity of the sale, and, if valid, confirm it; but if the sale has been made contrary to law, the court shall annul it." Sand. & H. Dig., §§ 633, 635, 636.

The proceeding to confirm sales of land is not authorized by the statute when any one is in possession of the land claiming adversely to the person seeking confirmation. If no one claiming adversely is in possession, and the other conditions prescribed by the statute are complied with, and any one claiming title to the land opposes the confirmation of the sale, then it is the duty of the court to try the validity of the sale. No investigation or inquiry into the validity of the title of the person opposing confirmation is required by the statute. The person claiming title must, however, do so in good faith. He should not be permitted to contest the validity of the sale solely for the purpose of defeating its confirmation. The privilege granted

to him is for the purpose of enabling him to protect his interest in the land; and it is necessary and sufficient for him to allege and prove such a state of facts as will show that he might claim in good faith some interest in or right to the land.

The evidence adduced at the hearing of this cause was sufficient to prove that appellees claimed title to the lands in controversy through the last will and testament of Eliza T. Hays, and that she acquired title to the same through various conveyances from the original purchasers from the state, who entered the lands on the 12th of February, 1862. They were "swamp and overflowed lands," and the parties who entered them did so under the act entitled "An act amendatory of existing laws regulating the landed interests of this state," approved 12th January, 1853. The evidence shows that they applied to the land agents of the state for the privilege of purchasing the lands at private entry, and offered to pay for the same at the rate of fifty cents per acre in reclamation certificates; and that they purchased and paid for the same in that manner; and that certificates of purchase were severally issued to them by such agents. So far their purchases seem to have been in substantial compliance with the statutes in such cases made and provided. Gould's Digest, p. 717, sec. 1; p. 719, sec. 6. But appellants say that these entries or purchases were afterwards canceled, and the lands were lawfully sold to D. C. Duell on the 1st of April, 1872, by authority of an act entitled "An act to define the condition of certain state lands and for other purposes," approved March 23, 1871, which provides in part as follows:

"Section 1. That any person claiming, holding or occupying any lands belonging to the state of Arkansas, under and by virtue of any pretended sale made to such party by any pretended authorities of the state after the 5th day of May, 1861, and before the 18th day of April, 1864, may present their claims to the commissioner of immigration and state lands on or before the 31st day of March, 1872. Upon the presentation of any such claims to said commissioner, he shall proceed immediately to investigate and make record of the same. If upon such investigation it appears that the person making said claim is en-

titled to a certificate of purchase for any land belonging to the state by reason of labor performed for the redemption of swamp lands, the said commissioner shall issue a certificate of sale to such person for the same, and said certificate shall be of like effect as though no action had been taken by any pretended authorities as aforesaid.

"Section 2. That all lands claimed, held or occupied under any pretended sale, as aforesaid, and no certificate issued therefor, as provided in section 1 of this act, before the 1st day of April, 1872, shall be sold and disposed of as other state lands; provided that any person holding any pretended certificate or patent from any pretended state authority for any lands shall have a pre-emption right thereto until the 31st day of March, 1872."

This view of the act may be reasonably entertained: it treats the sale of lands by the state after the 5th day of May, 1861, and before the 18th day of April, 1864, as void, and the land sold as still belonging to the state, and gives to the persons holding certificates of purchase or patents from the state for the same the right to pre-empt until the 31st day of March, 1872. It denominates all such sales as "pretended sales" by "pretended authorities of the state." It did not call in the certificates of purchase or patents issued by the state for these lands for the purpose of ascertaining whether they were valid or not. But the commissioner of immigration and state lands was required to investigate the claims of persons holding under such certificates and patents which were presented, and if he found that such persons were entitled to a certificate of purchase by reason of labor performed for the redemption of swamp lands, he was directed to issue certificates of sale to such persons; and the act declares that such certificates so issued by the commissioner "shall be of like effect as though no action had been taken by any pretended authorities as aforesaid." He was not authorized by the act to issue certificates of purchase to persons who had purchased and paid for land with money. The intent and effect of the act, if enforced, was absolutely to annul all sales by the state between the dates named. If this view of the act be correct, it was void.

We theretore think that appellees claimed such title to the lands in controversy as permitted them to oppose the confirmation of the sale thereof, and the decree as to such lands is affirmed.

RIDDICK, J., did not participate.