LEIGH AND THOMAS *v.* HALL, SECRETARY OF STATE.

5-2273; 5-2274                              339 S. W. 2d 104

Opinion delivered October 17, 1960.

*Wright, Harrison, Lindsey & Upton,* for plaintiff Leigh; *Rose, Meek, House, Barron & Nash,* for plaintiff Thomas.

*Bruce Bennett, Attorney General,* for defendant; *McMath, Leatherman, Woods & Youngdahl,* for intervenor.

J. SEABORN HOLT, Associate Justice.   These two actions (No. 2273 and No. 2274) are original actions under Amendment Seven (7) to the Constitution of the State of Arkansas to test the sufficiency of the popular name and ballot title of an initiated measure sponsored by Arkansas State AFL-CIO bearing the popular name "Arkansas Minimum Wage And Overtime Act" and questioning the following ballot title:

"An Act to prescribe for employees, with certain exceptions, a minimum wage of eighty cents per hour increasing after one year to ninety cents per hour and increasing after two years to one dollar per hour.   Further to prescribe for employees, with certain exemptions and exceptions, overtime wages of at least one and one-half times their regular rate for all hours worked over

forty-eight in each workweek, for all hours worked over forty-four in each workweek after one year; and for all hours worked over forty in each workweek after two years; and to provide for the administration of minimum and overtime wage provisions by the Arkansas Department of Labor; to provide for the enforcement of such provisions; and for other purposes.''

Specifically, the plaintiffs, Leigh and Thomas, present for our consideration (1) the sufficiency of the popular name, (2) the sufficiency of the ballot title and (3) the sufficiency of the publication of the measure.

### (1)

We have only a small body of case law dealing with the sufficiency of the popular name title of initiated measures. In *Pafford* v. *Hall*, 217 Ark. 734, 233 S. W. 2d 272, the term ''A Statewide Prohibition Act'' was attacked. The opponents argued that since the measure actually allowed possession of a single quart of intoxicating liquor, the name was misleading. But this court upheld the title concluding: ''It seems too clear for argument that the popular name need not have the detailed information as is required for the formal ballot title, else there would be no difference between the two . . .''

We did, however, point out in *Moore* v. *Hall*, 229 Ark. 411, 316 S. W. 2d 207, that catch phrases and slogans which tend to mislead and to color the merit of a proposal would be rejected. In *Bradley* v. *Hall*, 220 Ark. 925, 251 S. W. 2d 470, the popular name ''Modern Consumer Credit Amendment'' which was considered along with the ballot title was rejected. We there said: ''. . . no convincing explanation is offered for the use of the word 'modern'. It is certainly not descriptive of the amendment, unless we are to say that every amendment is modern merely because it is new. Rather, the word is used as a form of salesmanship, carrying the connotation that the original constitution is old-fogyish and outmoded, while the proposed amendment is modern and therefore

desirable. Even though the popular name need not be as explicit as the ballot title, *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72, it should not be used as a vehicle for unnecessary praise of the measure. In studying his ballot the voter is not bound by the rule of *caveat emptor.* He is entitled to form his own conclusions, not to have them presented to him ready-made.''

Plaintiff Thomas argues that the word ''Arkansas'' is useless in the popular name and that it tends to give partisan coloring to the act and is calculated to arouse state pride. Only a general response need be made to this contention. The term ''Arkansas'' seems most appropriate in view of the fact that the act would apply only in the State of Arkansas. It is also argued that the word ''overtime'' in the popular name is misleading because it does not say overtime for what. Although individual words may be singled out for attack in a popular name title, their meaning should be ascertained from their context. Only the most naive would not understand the meaning of overtime when he reads the title ''Arkansas Minimum Wage and Overtime Act''. Besides, as we have previously pointed out, the popular name need not have detailed information in it. We see no merit in the contention that the popular name is partisan colored and misleading.

## (2)

As to the sufficiency of the ballot title, the general principles of law applicable to ballot titles were well stated in *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470: ''On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute . . . It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law . . . We have recognized the impossibility of preparing a ballot title that would suit everyone . . . Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, of omission or of fallacy', and it must not be tinged with partisan coloring.''

In the order in which they appear in the court's opinion, a ballot title must be (1) intelligible (2) honest, and (3) impartial. The ballot title here in question is intelligible, concise and clear. It summarizes in about 130 words an act containing over 4,000 words and 18 sections. We have in some of our cases indicated that a ballot title of unusual length would be objectionable. See *Newton* v. *Hall*, 196 Ark. 929, 120 S. W. 2d 364. In the case of *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S. W. 2d 248, we said: ". . . The real objection urged to the title of the act . . . is the fact that it is not sufficiently elaborate. Any other ballot title would be susceptible of the same criticism unless it were in itself a complete abstract of the act which would be impracticable under ordinary conditions." And further, ". . . it has never been understood that the title of a statute should disclose the details embodied in the act. It is intended simply to indicate the subject to which the statute relates . . . When the *general subject* is indicated, no detail matters need be mentioned in the title." (emphasis supplied)

The title of a measure does not have to constitute a synopsis of the measure, *Bradley* v. *Hall, supra*. Here the act in question informs the voter that a minimum wage of $1.00 per hour will take effect in three years; stair-stepping from $ .80 an hour the first year to $ .90 an hour the second year and finally to $1.00 an hour the third year. Further, that all time worked over 48 hours, then 44 hours, and finally 40 hours is to be paid at the rate of time and one-half over a period covering three years from enactment. Also, that the administration of the minimum wage is provided for and that the Arkansas Department of Labor will administer the provisions of the act. The voter is also apprised of the fact there are certain exceptions and exemptions in the act. We conclude that the title meets the requirement that it must be intelligible.

The second requirement of a ballot title is that it must be honest. There can be no misleading tendency, whether of amplification, omission, or of fallacy. *West-*

*brook* v. *McDonald,* 184 Ark. 740, 44 S. W. 2d 331. It would be difficult to find a title which more honestly conveys an idea of what the act is intended to enact. The act provides for a stair-stepping of the minimum wage from $. 80 to $1.00 per hour and the ballot so states. The act provides for certain exemptions and the ballot so states. The act provides for administration of the act and the ballot title so states. The act provides for overtime wages and the ballot title so states. We find no dishonesty or improper amplification in the title

A third requirement is that the title be impartial. It is interesting to note that although both plaintiffs refer to the rule against partisan coloring, neither apparently is able to create specific allegations to this effect in relation to the ballot title. Crawford, *Statutory Construction,* pp. 85-86, states: "It would appear sufficient if the title would fairly convey to the average voter the general purpose and tenor of the law, without a tendency to mislead or to give a partisan coloring, since the ballot title is obviously intended to be a means of identification of the measure submitted to the electorate." We fail to find any misleading tendency in the ballot title.

(3)

The last contention of the plaintiffs is that the defendant did not comply with the publication requirements of Amendment Seven (7) of the Arkansas Constitution. Amendment Seven (7) to the Arkansas Constitution provides in relevant part that:

"Initiative petitions for State-wide measures shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon; provided, that at least thirty days before the afore-mentioned filing, the proposed measure shall have been published once, at the expense of the petitioners, in some paper of general circulation."

The publication of the initiated act was had on June 5, 1960. Parts of the petition were filed on June 27, some 22 days later; the remaining parts of the petition were

filed on July 7, 32 days after the publication. It is urged by the plaintiffs that the petition was not published 30 days before the filing of the petition.

We cannot agree with the plaintiffs for a number of reasons. We have previously held that the filing of several parts constitute but one petition. Such was the holding in *Hammett* v. *Hodges,* 104 Ark. 510, 149 S. W. 667, decided under our previous Initiative and Referendum Amendment (referred to as number ten in the case but more accurately number four) to the Constitution which was superseded by the present Amendment Seven. Although there was no provision for a thirty-day publication of the act in this previous Initiative and Referendum Amendment, the language with reference to filing petitions is practically the same as the language in the present Amendment Seven. The court, in passing upon the question of filing petitions, there held that all names in an initiated petition, even though on different sheets and *filed on different dates* should be considered as one petition. We there stated:

"We are of the opinion that the requisite number may be ascertained by adding together the names of the legal voters signed to the separate sheets that have been filed with the Secretary of State within the time prescribed by the act where these separate sheets, embodying the petition of the signers thereto, are in the form prescribed by the statute, and all containing the same subject-matter, the language of each petition being the same. The separate sheets, thus presented and filed in the contemplation of the Constitution and statute, constitute but one petition."

To support the above ruling, the court in the same case cited *Bridewell* v. *Ward & Key,* 72 Ark. 187, 79 S. W. 762, decided under our old three-mile local option law which provided for local option within three miles of any church or school upon petition for a majority of the voters within the three-mile area. Several petitions were filed with the county court, a remonstrance was filed and allowed by county court, whereupon it was discov-

ered by the petitioners that several petitions were not filed and it was asked that they be allowed to file them in support of their original petition. This was denied. Several days later another group of citizens asked leave to file supplemental petitions which the county court denied. This court, on reviewing the proceedings of the lower court, reversed the action of the county court saying of the petitions: "The fact that there were many of them, and that they were filed on different times, did not change their prayer or lessen the number of petitioners. The filing of the remonstrance made no such change, nor did it cut off the right of the petition. They were in effect only one petition and were evidently intended to be used as one."

To the same effect is *Reeves* v. *Smith*, 190 Ark. 213, 78 S. W. 2d 72, decided under the present Initiative and Referendum Amendment, where we said: "Amendment No. 7 to the Constitution of the State is the Initiative and Referendum Amendment, and provides, among other things, that the petition for an act to be initiated by the people may be circulated and presented in parts, but each part of any petition shall have attached thereto the affidavit of the persons circulating the same, etc. This means necessarily, that the 'parts' constitute but one petition for any proposed act filed with the county clerk, who shall pass upon the sufficiency of the petition."

Thus it can be seen that there is a definite thread running through our cases which says that all petitions in initiated measures should be counted as one petition even though filed on different dates. The only reasonable conclusion we can draw from the above citations is that the filing on June 27 and the filing on July 7 were but one petition.

The remaining problem then is, what is the proper date to consider the filing of the petition (since all parts are one); should it be June 27 or July 7? In considering this the following rules must be taken into account. This court is definitely committed to the proposition that Amendment Seven should be liberally construed to

effectuate its purpose. In the case of *Reeves* v. *Smith,* *supra,* this court enunciated the following guide posts for interpreting Amendment Seven: "... Amendment No. 7 necessarily must be construed with some degree of liberality in order that its purposes may be well effectuated. Strict construction might defeat the very purposes, in some instances, of the amendment.

"Another reason, not less cogent, is that Amendment No. 7 permits the exercise of the power reserved to the people to control, to some extent at least, the policies of the State, but more particularly of counties and municipalities, as distinguished from the exercise of similar power by the Legislature, and, since that residuum of power remains in the electors, their acts should not be thwarted by strict or technical construction. We are supported in this idea of more liberal construction by the following case: '*Ferrell* v. *Keel,* 105 Ark. 380, 385, 151 S. W. 269, 272. In construing this amendment, it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish. That object and purpose was to increase the sense of responsibility that the lawmaking power should feel to the people by establishing a power to initiate proper, and to reject improper legislation.'

"In *Townsend* v. *McDonald,* 184 Ark. 273, 278, 42 S. W. 2d 410, 413, Chief Justice Hart, discussing *State ex rel* v. *Olcott,* 62 Ore. 277, 125 Pac. 303, said: 'This would make each sheet a separate petition and would be putting form above substance. No matter how many signers there are to a petition and how many sheets are used, they are pasted together and become a constitutent part of the same petition. It is only necessary that a full and correct copy of the measure on which the referendum is asked be filed with the petition and attached thereto, in order that the petitioners may have the opportunity to read it and inform themselves as to the act to be referred before signing the petition, if they wish to do so.'

"A realization that behavior and conduct in all affairs of life is never perfect, requires due allowances must be made for human frailties. Therefore only a substantial compliance is required. *Westbrook* v. *McDonald,* 184 Ark. 740, 746, 43 S. W. (2d) 356, 43 S. W. (2d) 331."

In this particular case there are sound reasons for applying the liberal construction rule. In the first place, the pertinent language in Amendment Seven (7) relative to 30 days notice is far from being unambiguous. In the second place, we can conceive of no purpose for requiring the 30 days advertisement other than to inform the electors of the provisions of the proposed act so that they may vote intelligently at the November election. The purpose manifestly was not to inform the electors so that they might decide whether or not to sign the petition. This is true for in many instances most or all of the signatures are obtained before the act is published. It is common knowledge that it requires much time and effort to obtain petitions on a state-wide basis, and that it is necessary to have a large number of petitions, and further that these petitions are filed from time to time with the Secretary of State. This being true, we think the only reasonable interpretation and conclusion to be drawn is that the filing date must be as late as the date the last petition is filed and this would be July 7, which was more than 30 days after publication.

The act was properly certified by the Secretary of State and the prayer for an injunction is denied.

McFADDIN and ROBINSON, JJ., dissent.

GEORGE ROSE SMITH, J., not participating.

ED. F. McFADDIN, Associate Justice (dissenting). I find myself unable to agree with the majority opinion, because I am thoroughly convinced that the sponsors of the proposed Act failed to comply with the clear requirements contained in Amendment No. 7 to the Constitution relating to the publication of the proposed Act thirty days before filing. Here is the said provision in the Constitution:

"Initiative — The first power reserved by the people is the initiative. . . . Initiative petitions for State-wide measures shall be *filed* with the Secretary of State not less than four months before the election at which they are to be voted upon; provided, that at least *thirty days* before the aforementioned *filing,* the proposed measure shall have been published once, at the expense of the petitioners, in some paper of general circulation. . . ." (**Emphasis supplied.**)

The Constitution says that at least *thirty days* before the petition is filed the proposed measure shall have been published in a newspaper. On June 5, 1960 the proposed measure was published; on June 27, 1960 the petition was filed; and that is twenty-two days after publication and not thirty days. Twenty-two does not equal thirty: that is the basis of my dissent.

I say the petition was filed on June 27th, and such is the record before us. Under the provisions of **Amendment** No. 7 the sponsors of a proposed initiated measure were required to file signatures of 8% of the legal voters. That would mean 22,950 signatures were required on this petition. On June 27th the sponsors of the measure filed a petition containing 40,103 signatures, and the Secretary of State on June 27th (in keeping with § 2-210 Ark. Stats.) notified the sponsors as follows: "I have examined your petition and according to our count you have 40,013 signatures. Since 22,950 signatures are required for an initiated act, this is to advise you that your petition has met this requirement. . . ."

What was that filing date? The answer is, June 27, 1960, because on that date the certificate was issued by the Secretary of State and the filing was complete. Anything occurring after that date is mere surplusage. The present lawsuit was filed in this Court on September 7, 1960; and one of the attacks against the measure was the failure to comply with the thirty-day publication requirement. Under date of September 20, 1960 (thirteen days after the filing of this suit in this Court), the Secretary of State issued a certificate reading: "This is to certify

that the sponsors of the proposed initiated act, which has for its popular name, 'Arkansas Minimum Wage and Overtime Act', completed the filing of their petitions on the 7th day of July, 1960 when they filed petitions containing 1057 signatures proposing said measure. Dated this 20th day of September, 1960." So, after this lawsuit was filed in this Court, the sponsors went back to the Secretary of State and obtained a certificate that on July 7th 1057 additional signatures had been filed; and the sponsors say that this 1057 additional signatures filed on July 7th "completed the filing", and made the "substantial compliance" to be on that day. I cannot follow such reasoning: the Secretary of State had already issued a certificate on June 27th, as required by § 2-210 Ark. Stats., that the petition had been filed on June 27th. The filing on July 7th was entirely an afterthought, just as was the September 20th certificate from the Secretary of State, which was obtained by the sponsors after this lawsuit had been filed, and which was brought into the record by amendment to the sponsors' original answer. If the July 7th filing of 1057 additional signatures had been required by law, then the Secretary of State (under § 2-210, Ark. Stats.) was obligated to issue his certificate of that filing within fifteen days from July 7th; and the Secretary of State is too careful an official to have failed to comply with § 2-210, Ark. Stats. He would have issued a certificate within fifteen days of July 7th (rather than on September 20th) if anyone had thought that July 7th was the filing date. It is crystal clear that the July 7th filing has been seized on by the sponsors as a crutch to support a broken limb. July 7th cannot have been a date of "substantial compliance" because the whole filing had been completed and certified on June 27th.

As to why Constitutional Amendment No. 7 required that the publication of the measure must be thirty days before the filing, I do not know. Some say that the purpose of the thirty-day publication requirement prior to filing was to inform the *voter,* rather than the *signer,* of the proposed measure. Such an argument is making a surmise to be stronger than plain words. I do know that

this provision of thirty days publication is in the Amendment No. 7; and its presence is quite commanding. Arkansas originally adopted[1] the Initiative and Referendum by a Constitutional Amendment in 1909, which is *not* the present Amendment No. 7. Nowhere in the said 1909 Initiative and Referendum Amendment was there any requirement of thirty days publication before filing. At the General Election in November, 1920 there was adopted by the people our present Amendment No. 7; and in our present Amendment No. 7 there appears, for the first time, the provision requiring the publication of the proposed measure to be thirty days before the filing of the petition. The point I am making is, that this language was put into the amendment deliberately and after we had operated under a previous Initiative and Referendum Amendment for a number of years. So it must have been thought that there should be publication before the proposed petition was filed. The framers of the Constitutional Amendment said thirty days; I cannot make twenty-two days equal thirty days.

In tax sales we have repeatedly held that when a statute states a number of days for publication such provision is mandatory. In *McWilliams* v. *Clampitt*, 195 Ark. 908, 115 S. W. 2d 280, the statute required the notice to be published weekly for two weeks before the sale. Notice was published on June 1st and June 8th and the sale was held on June 12th. The Court found that the notice was published for only eleven days, and held the sale was, therefore, void. Some of the other tax sale cases holding the time of publication to be mandatory are: *Laughlin* v. *Fisher*, 141 Ark. 629, 219 S. W. 199; and *Thweatt* v. *Howard*, 68 Ark. 426, 59 S. W. 764. In 82 C. J. S. 235 the general holdings are summarized: ''Constitutional and statutory

---

[1]The 1909 Initiative and Referendum Amendment is listed as Amendment No. 10 to the Constitution and may be found on pages 121 and 122 of Kirby & Castle's Digest of 1916, and on pages 1239 and 1240 of the Acts of the Legislature for the year 1909. It may also be found listed as Amendment No. 7 on pages 131 and 132 of Crawford & Moses' Digest of 1921. To provide procedural matters for the 1909 Amendment, the Arkansas General Assembly of 1911 adopted Act No. 2 of the Extraordinary Session that convened on May 22, 1911 (see pages 582 *et seq.* of the printed Acts of 1911).

provisions with respect to the publicity which must be given initiative and referendum measures are mandatory; . . ."

The sponsors say that the filing on July 7th was "substantial compliance"; but there is another rule of law which says that before an election the provisions of the election law are mandatory, even though after the election they may be held merely directory. *Orr* v. *Carpenter*, 222 Ark. 716, 262 S. W. 2d 280; and *Horn* v. *White*, 225 Ark. 540, 284 S. W. 2d 122. We are now considering this case *before* the election; and in that situation the thirty-day provision for publication is mandatory. It has not been complied with in this case.

Therefore, I respectfully dissent.