Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted a similar measure, which I rejected due to ambiguities in the text of your proposed amendment. See
Op. Att'y Gen. 2001-074. You have made changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AMENDMENT FOR NON-PROFIT BINGO, RAFFLES, FOR PROFIT GAMBLING AND EXEMPTING CERTAIN FOOD ITEMS FROM STATE AND LOCAL SALES TAXES
 Ballot Title AN AMENDMENT PERMITTING BINGO AND RAFFLES OPERATED BY NON-PROFIT ORGANIZATIONS INCORPORATED OR REGISTERED TO DO BUSINESS IN THE STATE; PROHIBITING PERSONS UNDER AGE 18 TO PARTICIPATE IN BINGO AND RAFFLES; PERMITTING GAMBLING ON WATER VESSELS WHILE ANCHORED ON NAVIGABLE WATER WAYS AND PUBLIC LAKES ON ANY DAY FOR THE WHOLE OF A 24 HOUR DAY WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES WITHIN ANY COUNTY, CITY AND TOWN OF THE STATE BY BARRY LEE EMIGH WITHOUT LICENSE OR FEE AND FOR BARRY LEE EMIGH TO HIRE PERSONS TO OPERATE GAMBLING AND TO SUBCONTRACT THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES EXTENDED WITHOUT LICENSE OR FEE; DEFINING GAMBLING AS THE RISKING OF MONEY ON A CHANCE BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEELS, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER; EXEMPTING THE TRANSFER OF THE GAMBLING OPERATION AND GAMBLING PROPERTY AS AN INHERITANCE FROM BARRY LEE EMIGH TO HIS HEIRS, THEIR HEIRS AND SO ON FROM APPROVAL OF THE GENERAL ASSEMBLY AND WITHOUT TAXATION OR FEE BY THE STATE; REQUIRING THE TRANSFER OF THE GAMBLING OPERATION FROM BARRY LEE EMIGH, HIS HEIRS, THEIR HEIRS AND SO ON TO ANY OTHER PERSON, COMPANY OR CORPORATION HAVE A MAJORITY APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY; EXEMPTING ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), LEASE OF PROPERTY, PROPERTY PURCHASES, BANK LOANS AND LIENS ON PROPERTIES USED FOR GAMBLING FROM APPROVAL OF THE GENERAL ASSEMBLY; PROHIBITING PERSONS UNDER AGE OF 21 TO PARTICIPATE IN GAMBLING ON WATER VESSELS; PROVIDING LEGAL SHIPMENT OF GAMBLING DEVICES; PROVIDING THE GAMBLING OPERATOR TO DEDUCT ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), INSURANCE, EMPLOYEE PAYROLL AND BENEFITS, LEASE OF PROPERTY, INTEREST ON LOANS, ADVERTISING AND PROMOTION, COMPLIMENTARY ALCOHOLIC BEVERAGES AND FEDERAL TAXES WITH ALLOWABLE DEDUCTIONS FROM THE AMOUNT EARNED OVER THE AMOUNT PAID AS GAMING LOSSES BEFORE ANY AMOUNT IS PAID AS THE NET GAMING PROFIT; REQUIRING 4% OF THE NET GAMING PROFIT FROM ALL GAMBLING ON WATER VESSELS BE PAID ANNUALLY TO THE STATE'S GENERAL FUND; REQUIRING 2% OF THE NET GAMING PROFIT FROM GAMBLING ON EACH WATER VESSEL WITHIN A COUNTY BE PAID ANNUALLY TO THAT COUNTY'S GENERAL FUND; REQUIRING 2% OF THE NET GAMING PROFIT FROM GAMBLING ON EACH WATER VESSEL WITHIN A CITY'S JURISDICTION BE PAID ANNUALLY TO THAT CITY'S GENERAL FUND; REQUIRING 8% OF THE NET GAMING PROFIT FROM GAMBLING ON ALL WATER VESSELS BE PAID ANNUALLY TO THE DEPARTMENT OF EDUCATION AND DISTRIBUTED (LESS ANY DEDUCTIONS) WITHOUT AN APPROPRIATION REQUIREMENT BY THE GENERAL ASSEMBLY WITH 50% DIVIDED BY ALL K THRU 12TH GRADE STUDENTS IN THE STATE AND PAID TO EACH SCHOOL BASED ON STUDENT ENROLLMENT WITH THE OTHER 50% DIVIDED BY ALL TEACHERS EMPLOYED BY PUBLICLY FUNDED INSTITUTES OF EDUCATION WITH EACH TEACHER PAID AN EQUAL AMOUNT; EMPOWERING THE LOCALLY ELECTED SCHOOL BOARDS TO REGULATE THE USE OF THE NET GAMING PROFIT PAID TO SCHOOLS; EMPOWERING THE DEPARTMENT OF EDUCATION TO DEDUCT IT'S EXPENSES FROM THE 8% NET GAMING PROFIT USED TO PAY THOSE SCHOOLS AND TEACHERS; REQUIRING THE GAMBLING OPERATOR TO ANNUALLY PROVIDE THE STATE AUDITOR WITH THE COMPLETE COPIES OF THE BOOKS AND ACCOUNTS OF THE GAMBLING OPERATION; REQUIRING THE STATE AUDITOR NOTIFY THE GAMBLING OPERATOR OF ANY DEFICIT PAYMENTS OF WHICH SHALL BE PAID WITH AN ANNUAL PERCENTAGE RATE OF 9% ON ANY AMOUNT NOT PAID; EXCEPT AS SPECIFIED IN THIS AMENDMENT NO OTHER TAX SHALL BE LEVIED BY THE STATE ON GAMBLING REVENUE; NO PROPERTY TAX, FEES, OR ASSESSMENTS SHALL BE LEVIED BY THE STATE, SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON ANY WATER VESSEL AND THE CONTENTS THEREIN USED FOR GAMBLING; EXEMPTING FOOD ITEMS DEFINED AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL BEGINNING ON THE FIRST TUESDAY OF DECEMBER, 2002, FROM ANY NEW AND EXISTING STATE AND LOCAL GROSS RECEIPT SALES TAXES NOT USED FOR THE PURPOSE OF AN EXISTING BOND ISSUE OF WHICH REVENUE LOSS SHALL NOT BE REPLACED BY THIS AMENDMENT; EXCLUDING FOOD ITEMS INCLUDED UNDER THE "ARKANSAS SOFT DRINK TAX ACT", EXCLUDING FOOD ITEMS EXCLUDED FROM THE "ARKANSAS SOFT DRINK TAX ACT" AFTER PASSAGE OF THIS AMENDMENT, EXCLUDING FOOD ITEMS PREPARED AND SERVED BY A RESTAURANT, OR OTHER BUSINESSES SIMILAR TO RESTAURANTS SERVING PREPARED FOODS AND EXCLUDING ALCOHOLIC BEVERAGES FROM THE EXEMPTION OF ANY NEW AND EXISTING STATE AND LOCAL GROSS RECEIPT SALES TAXES; DEFINING THE NET PROFIT AS THE AMOUNT EARNED FROM GAMBLING AFTER DEDUCTING THE COST OF ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), INSURANCE, EMPLOYEE PAYROLL AND BENEFITS, LEASE OF PROPERTY, INTEREST ON LOANS, ADVERTISING AND PROMOTION, COMPLIMENTARY ALCOHOLIC BEVERAGES AND ALL FEDERAL TAXES WITH DEDUCTABLE [DEDUCTIBLE] ALLOWANCES FROM THE AMOUNT EARNED OVER THE AMOUNT PAID AS GAMING LOSSES BEFORE ANY AMOUNT IS PAID AS THE NET GAMING PROFIT; DEFINING PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS AS ANY PUBLICLY FUNDED SCHOOL HAVING THE GRADES OF KINDERGARTEN THRU 12TH GRADES IN ANY COMBINATION OF GRADES; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE THE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Although the term "gambling" is defined in your proposed amendment, the term "gambling operation" is undefined. One question in this regard is whether the term "gambling operation" includes the water vessel used for the purpose of gambling, which is tax-exempt under Section 4(11). This could obviously have significance in calculating the "net gaming profit," which depends in part on the" operational costs of the gambling operation." See Section 10(1)(b).
 2. The language in Section 7 of your measure is unclear wherein it proposes to "exclude . . . from the exemption" certain items. As an initial matter, the reference to "food items under the `Arkansas Soft Drink Tax Act'" is ambiguous. I am uncertain whether you intend to refer to all items that are subject to the tax levied under A.C.A. 26-57-901 et. seq. Although the term "food items" is defined in your measure, this is not a recognized term under the Soft Drink Tax Act. Additionally, "exclud[ing]" items "from the exemption" is extremely confusing. I realize that it may be your intention, in Section 7, to state that your amendment will not affect gross receipt sales taxes on items that are either subject to or exempt from the Arkansas Soft Drink Tax Act. However, it is very difficult to reach this interpretation based upon the current wording. I believe the voter would have a very difficult time untangling the meaning of this provision. This provision must, in my view, be reworded and simplified to fairly admit of this interpretation.
 3. An ambiguity also arises under Section 7 wherein it proposes to "exclude . . . food items excluded from the `Arkansas Soft Drink Tax Act' after voter approval of this amendment. . . ." This language is confusing on several levels. This provision, in reduced form, actually states that the amendment will "exclude . . . any food items excluded from the `Arkansas Soft Drink Tax Act' . . . from the exemption. . . ." Deciphering the meaning of this convoluted language is difficult, at best. The voter cannot be expected to readily glean your intent from this terminology. As it stands, this provision requires several readings before any meaningful interpretation emerges; and even then I am uncertain as to the true intent. The phrase "after voter approval of this amendment" also generates uncertainty. This could mean that after voter approval, food items that are exempted from the Soft Drink Tax, whether before or after adoption of this amendment, will not fall within the sales tax exemption provided by the amendment. A review of your proposed ballot title suggests, however, that this may not in fact have been your intention. Nevertheless, the meaning is unclear from the current wording.
 4. The language in Section 8 regarding the exclusion of restaurant food items from the exemption of sales taxes suffers from the same ambiguity and confusion noted above with regard to Section 7. This provision should be reworded to clearly and concisely convey your intent.
 5. Section 8 is also misleading and confusing in that the referenced statutes neither authorize nor define restaurants or similar businesses, as the text of this section wrongly declares.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General