The Honorable Charles L. Ormond State Representative 1500 View Street Morrilton, AR 72110-3725
Dear Representative Ormond:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment:
 Popular Name AN AMENDMENT TO CREATE THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING TO OPERATE CHARITABLE BINGO, LOTTERY GAMES, AND WAGERING
 Ballot Title PROPOSING AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING WHICH SHALL BE VESTED WITH THE POWER TO OPERATE AND REGULATE CHARITABLE BINGO, LOTTERY GAMES, AND WAGERING GAMES; TO PROHIBIT THE GENERAL ASSEMBLY FROM REGULATING THE COMMISSION OR CHARITABLE BINGO, LOTTERY GAMES, OR WAGERING GAMES CONDUCTED BY THE COMMISSION; TO LICENSE CHARITABLE BINGO; TO PROVIDE FOR A STATE-WIDE LOTTERY; TO AUTHORIZE THE COMMISSION TO CONDUCT WAGERING GAMES IN FACILITIES OWNED AND OPERATED BY THE COMMISSION OR MAY ENTER INTO A CONTRACT WITH ANY PERSON TO OPERATE WAGERING GAMES; TO LEGALIZE SHIPMENTS OF GAMBLING DEVICES INTO STATE; TO REQUIRE APPROVAL BY THE VOTERS OF A COUNTY BEFORE WAGERING GAMES; TO ESTABLISH WAGERING DISTRICT ADVISORY COMMITTEES; TO PROVIDE THAT A PORTION OF THE PROCEEDS FROM WAGERING GAMES, WAGERING FACILITIES, AND ANCILLARY OPERATIONS SHALL BE USED IN WAGERING DISTRICTS TO PROVIDE SUPPORT TO LOCAL TAXING UNITS, REBATES TO TAXPAYERS FOR A PORTION OF REAL PROPERTY TAXES PAID, AND REIMBURSEMENT TO RESIDENTS FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS; TO AUTHORIZE AGREEMENTS BETWEEN THE COMMISSION AND THOROUGHBRED RACING TRACKS AND GREYHOUND RACING TRACKS FOR THE CONDUCT OF WAGERING GAMES BY THE TRACKS; TO AUTHORIZE THE COMMISSION TO CONDUCT PROMOTIONS THAT GIVE AWAY LODGING, FOOD, NON-ALCOHOLIC OR ALCOHOLIC BEVERAGES, OR ANY THING OF VALUE; TO PROVIDE FOR THE SERVICE OF ALCOHOLIC BEVERAGES AT WAGERING FACILITIES; TO CONTRACT IN THE COMMISSION'S NAME, BORROW MONEY AND EXECUTE NEGOTIABLE EVIDENCES OF DEBT, TO PLEDGE REVENUE, AND TO ACQUIRE PROPERTY, TO AUTHORIZE THE COMMISSION TO EXERCISE THE POWER OF EMINENT DOMAIN; TO PROVIDE THAT THE DEBTS OF THE COMMISSION SHALL NOT BE DEBTS OF THE STATE OF ARKANSAS; TO ESTABLISH THE METHOD OF SELECTING COMMISSIONERS OF THE COMMISSION AND THEIR TERMS OF OFFICE; TO NAME CHARLES ORMOND AS THE INITIAL DIRECTOR OF THE COMMISSION; TO ALLOW THE COMMISSION TO ESTABLISH THE SALARIES OF THE DIRECTOR, COMMISSIONERS, AND EMPLOYEES; TO PROVIDE THAT SOVEREIGN IMMUNITY APPLIES TO THE COMMISSION; TO AMEND SECTION 14 OF ARTICLE 19 OF THE ARKANSAS CONSTITUTION TO CONFORM WITH THIS PROPOSED AMENDMENT; AND FOR OTHER PURPOSES
You have previously submitted a popular name and ballot title for a similar proposed measure, which was rejected on the grounds of certain ambiguities in the text of the proposed measure. See, e.g., Op. Att'y Gen. 2005-089.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must again reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title will be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. You have now clarified your measure, in response to my last correspondence (Op. Att'y. Gen. 2005-089), to expressly provide that "[t]he General Assembly shall have no power to regulate the commission" and that "[e]xcept for the power to increase the percentage of net proceeds under Section 13, neither the General Assembly nor any political subdivision of the State of Arkansas shall regulate the Arkansas Commission on Lotteries and Wagering or its activities." See
§§ 2(b) and 15. I noted in Opinion 2005-089, however, that the express denial of such authority "may raise additional uncertainties concerning your measure" including the "filing requirements" and" election mechanics" for directors. Your current proposal provides for the election of one "commissioner" from each of the State's congressional districts at the regular biennial general elections. § 3(a)(1) and § 3(b)(1). Your measure leaves unclear, however, whether these commissioners are to be elected on a partisan basis (by party primary), or whether they are to be elected as non-partisan independent candidates. Similarly, your measure does not detail how candidates for commissioner will qualify for the ballot. Can any and all persons have their names placed on the ballot or is there some filing fee requirement or petition process that must be followed? Compare A.C.A. § 7-5-207(a) (requiring election ballots to contain the name of every candidate whose nomination has been certified to the county board and prohibiting the inclusion of the name of any person who has not been certified); A.C.A. § 7-5-208 (f)(1) (requiring every ballot to contain the name of each candidate who has been nominated or has qualified in accordance with law for each office"); A.C.A. § 7-7-101 (prohibiting the inclusion of the name of any person on the ballot unless the person has been certified as a nominee selected pursuant to the subchapter); and A.C.A. §§ 7-7-102 and 7-7-103 (outlining the procedure for certification of party primary nominees and independent candidates respectively). This ambiguity is particularly troubling in light of the fact that under your proposal, the General Assembly would have no power to specify the exact procedure for the election of commissioners. Questions will arise under your proposal as soon as 2009 as to how the candidates for the first commissioner opening will qualify for the ballot. In addition, your measure leaves unclear whether the commissioners may be elected by a plurality vote or whether any runoff election is necessary (cf. Op. Att'y. Gen. 91-393); how vacancies on the commission will be filled (cf. Arkansas Constitution, Amendment 29); and whether there are any additional qualifications for commissioners other than those required of all candidates under the Arkansas Constitution. Again, the General Assembly will not, under your proposal, have authority to legislate on any of these matters, at least some of which may give the voters "serious ground for reflection."
 2. I also noted in my response to your last submission that your previous proposal was unclear as to the State's liability for debts incurred by the "corporation." Your current proposal omits any reference to a "corporation," substituting the word "commission" throughout the proposed amendment. Your proposal retains the power of the commission, however, to borrow money, incur debt and pledge its revenues to secure the payment thereof. I noted in my last response that the State of Arkansas' liability for such debts was unclear under your prior proposal. Although you have now made an addition to your proposed ballot title stating that ". . . the debts of the commission shall not be the debts of the State of Arkansas . . ." this assertion does not appear in the text of your proposed constitutional amendment. As a consequence, your measure remains ambiguous on this point.
 3. Section 13 of your proposed amendment details the use of income received by the commission and states that fourteen percent of the "net proceeds" derived from wagering games within a wagering district shall be" distributed among the counties, municipalities, and school districts in proportion to the real property taxes levied by each of the taxing authorities in the previous calendar year." (Emphasis added). Although I did not mention any potential ambiguity in similar language used in your previous submission, it probably bears mentioning that technically speaking, municipalities and school districts do not "levy" their own taxes. The rate of tax for each is certified (see A.C.A. § 26-73-202 (municipalities) and A.C.A. § 6-14-114 and 115 (school districts)), and then the quorum court, at its regular meeting in November, "lev[ies]" the county, municipal and school taxes for the current year. See A.C.A. § 14-14-904(b)(1). The use of the words "levied by each" in relation to municipalities and school districts may therefore give rise to an ambiguity as to the proper distribution of the funds in question.
 4. Although I cannot at this time substitute a popular name and ballot title for you measure in light of the unresolved issues detailed above, I must note that a number of changes and additions to your proposed ballot title will be necessary. Your proposed amendment gives virtually unbridled discretion to the commission created therein. There do not appear to be any applicable audit requirements on the commission, any constraints on the commission's calculation of "net proceeds" from lottery or wagering activities, any minimum amount of lottery proceeds required to be distributed as prizes or in fact any constraints on the amount of salary that the commission may pay its members or director. In addition, I gather from your failure to address the applicability of the Freedom of Information Act, or the Administrative Procedures Act or any other potentially applicable regulatory checks and balances in your current submission (after my mention of such laws in response to your last submission), that it is your intention to shield the commission from compliance with such laws. You have solidified the commission's discretion by prohibiting the General Assembly from legislating on any of these matters with respect to the commission. The exceptional autonomy granted the commission must be made abundantly and prominently clear to the voters of this State in a ballot title for your measure. Your proposed ballot title does not presently go far enough in alerting the voters to these matters.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely
MIKE BEEBE Attorney General
MB/cyh