Charles S. Embry, Jr. Embry Law Firm 220 N. Willow, Suite 118 North Little Rock, AR 72114
Dear Mr. Embry:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT TO PERMIT ANY RESTAURANT OR ANY HOTEL OPERATING A RESTAURANT IN ANY COUNTY IN THE STATE TO SERVE AND SELL LIQUOR, WINE, BEER AND ALCOHOLIC BEVERAGES FOR ON PREMISES CONSUMPTION (BY THE DRINK); TO ALLOW THE CLOSED CONTAINER SALE OF BEER AND WINE AT ANY GROCERY OR CONVENIENCE STORE IN ANY COUNTY OF THE STATE; TO LEVY A SPECIAL TWO (2%) SALES TAX ON THE SALE OF ALCOHOLIC BEVERAGES TO BE COLLECTED BY THE STATE AND DEDICATED TO THE ARKANSAS DEPARTMENT OF HUMAN SERVICES OR ITS SUCCESSORS; TO REQUIRE THAT VOTERS APPROVE OR REJECT ANY INCREASE IN STATE TAXES OR STATE FEES LEVIED ON THE SALE OF ALCOHOLIC BEVERAGES IN A GENERAL ELECTION; TO REQUIRE VOTERS APPROVE OR REJECT ANY NEW STATE TAXES OR STATE FEES ON THE SALE OF ALCOHOLIC BEVERAGES IN A GENERAL ELECTION; TO PERMIT RESTAURANTS, HOTELS, GROCERY STORES AND CONVENIENCE STORES TO TRANSPORT ALCOHOLIC BEVERAGES ACROSS COUNTY LINES WITHIN THIS STATE; TO PERMIT RESTAURANTS OR HOTELS OPERATING A RESTAURANT TO SERVE AND SELL ALCOHOLIC BEVERAGES BY THE DRINK ON SUNDAY AND PROHIBITING THE STATE FROM RESTRICTING THE HOURS OF OPERATION OF A RESTAURANT OR HOTEL OR IMPOSING TAXES, FEES OR OTHER COSTS ON THE BUSINESSES WHICH ELECT TO SELL ALCOHOLIC BEVERAGES ON SUNDAY; TO REPEAL ANY AND ALL LAWS, ORDINANCES AND LOCAL OPTION ELECTION RESULTS WHICH PROHIBIT THE SALE OF ALCOHOLIC BEVERAGES BY THE DRINK OR IN CLOSED CONTAINERS BY RESTAURANTS, HOTELS, GROCERY STORES OR CONVENIENCE STORES IN DRY COUNTIES OR DRY AREAS OF WET COUNTIES AND ANY OTHER LAWS, ORDINANCES OR REGULATIONS WHICH CONFLICT WITH THIS AMENDMENT
 Ballot Title
AN AMENDMENT TO THE STATE CONSTITUTION:
 1. TO PERMIT ANY RESTAURANT OR ANY HOTEL OPERATING A RESTAURANT IN ANY COUNTY OF THIS STATE TO SERVE AND SELL LIQUOR, WINE, BEER AND OTHER ALCOHOLIC BEVERAGES IN THEIR ESTABLISHMENTS FOR ON-PREMISES (BY THE DRINK) CONSUMPTION DURING THE RESTAURANT'S NORMAL HOURS OF BUSINESS.
 2. TO PERMIT ANY GROCERY STORE OR CONVENIENCE STORE IN ANY COUNTY TO SELL WINE AND BEER, IN A CLOSED CONTAINER, FOR OFF PREMISES CONSUMPTION, DURING THE STORE'S NORMAL HOURS OF BUSINESS.
 3. TO REQUIRE THAT EACH RESTAURANT OR HOTEL OPERATING A RESTAURANT, GROCERY STORE OR CONVENIENCE STORE WHICH BEGINS SALES, SERVICE OR DISTRIBUTION OF ALCOHOLIC BEVERAGES FOLLOWING PASSAGE OF THIS AMENDMENT, WHETHER BY THE DRINK OR IN CLOSED CONTAINER SALES, TO OBTAIN A PERMIT FROM THE ALCOHOLIC BEVERAGE CONTROL BOARD BEFORE BEGINNING THE SERVICE, SALE, BARTER OR DISTRIBUTION OF ALCOHOLIC BEVERAGES, LIQUOR, WINE OR BEER IN THEIR BUSINESSES.
 4. TO PROHIBIT THE SALE OR SERVICE OF ALCOHOLIC BEVERAGES TO ANY PERSON UNDER THE AGE OF 21 YEARS.
 5. TO LEVY A TWO (2%) PERCENT SPECIAL STATE SALES TAX ON THE RETAIL SALE OF ALL ALCOHOLIC BEVERAGES OF WHICH PROCEEDS OF SAID SPECIAL TAX SHALL BE DEDICATED TO THE ARKANSAS DEPARTMENT OF HUMAN SERVICES OR ITS SUCCESSORS.
 6. TO PERMIT ANY RESTAURANT, HOTEL, GROCERY STORE, CONVENIENCE STORE OR WHOLESALE SUPPLIER OR WHOLESALE DISTRIBUTOR TO TRANSPORT ALCOHOLIC BEVERAGES THROUGHOUT THE STATE REGARDLESS OF WHETHER SUCH TRANSPORTATION OCCURS THROUGH DRY COUNTIES OR DRY AREAS OF WET COUNTIES AND PROHIBITING THE STATE OR ANY POLITICAL SUBDIVISION OF THIS STATE FROM IMPOSING ANY FEES, TAXES, ENFORCEMENT TAXES, COSTS OR OTHER SURCHARGES ON THE TRANSPORTATION OF ALCOHOLIC BEVERAGES WITHIN THE STATE OR LIMITING THE AMOUNT OF ALCOHOLIC BEVERAGES THAT MAY BE TRANSPORTED WITHIN THE STATE.
 8. TO REQUIRE THAT THE VOTERS, BY GENERAL ELECTION, APPROVE THE INCREASE OF ANY STATE TAXES OR STATE FEES WHICH ARE LEVIED ON THE SALES OF ALCOHOLIC BEVERAGES BY THE STATE OF ARKANSAS OVER AND ABOVE THOSE RATES AS THEY EXIST ON JANUARY 2, 2002 LESS AND EXCEPT THOSE INCREASES SET FORTH IN THIS AMENDMENT.
 9. TO REQUIRE THAT THE VOTERS, BY GENERAL ELECTION, APPROVE ANY NEW STATE TAXES OR STATE FEES WHICH ARE TO BE LEVIED ON THE SALES OF ALCOHOLIC BEVERAGES BY THE STATE OF ARKANSAS.
 10. TO PERMIT ANY RESTAURANT OR HOTEL OPERATING A RESTAURANT TO SERVE ALCOHOLIC BEVERAGES BY THE DRINK ON SUNDAY, IF THAT DAY FALLS WITHIN THE NORMAL OPERATING HOURS OF THESE ESTABLISHMENTS.
 11. TO REPEAL ANY AND ALL LAWS, ORDINANCES, OR LOCAL OPTION ELECTION RESULTS WHICH ARE IN CONFLICT WITH THIS AMENDMENT OR WHICH PROHIBIT OR RESTRICT THE SALE OF LIQUOR, WINE, BEER AND ALCOHOLIC BEVERAGES FOR ON PREMISES CONSUMPTION (BY THE DRINK)IN RESTAURANTS AND HOTELS THROUGHOUT THIS STATE OR WHICH PROHIBIT OR RESTRICT THE SALE OF WINE AND BEER IN ANY GROCERY OR CONVENIENCE STORE IN ANY DRY COUNTY OR DRAY AREA OF A WET COUNTY OF THE STATE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 1. In subsection 1(a) of your proposed amendment, although I appreciate it closely tracks the definition set forth at A.C.A. § 3-9-402(1), your proposed definition of "alcoholic beverages" as "all intoxicating liquors of any sort including but not limited to liquor, wine, beer, or derivatives therefrom" could be read as including unintended varieties of liquid mischief ranging from methyl alcohol to carburetor ether. The Code contains various provisions that define the term more precisely and in ways more attuned to the apparent intention underlying your proposed amendment. See, e.g., A.C.A. §§ 3-1-102, 3-5-202 and 3-8-201. I cannot summarize your measure in a ballot title unless you clarify precisely what beverages you mean to include within the scope of your proposed amendment.
 2. Although subsection 1(e) of your proposed amendment tracks verbatim the definition of "hotel" set forth at A.C.A. § 3-9-202(9), I find vague and confusing the requirement that meals be "regularly served" to guests in a hotel's dining facilities. By comparison, A.C.A. § 3-9-402(4)(G) contains a requirement that a "hotel" as defined contain at least one dining room that "serves food on all days of operations." As drafted, your proposed amendment leaves unclear whether a hotel dining facility must engage in the same minimal level of activity as a "restaurant" as defined in subsection 1(a)(i), which is required to serve "at least one (1) meal per day" for "a minimum of five (5) days per week, with the exception of holidays, vacations, and periods of redecorating." In short, the term "regularly served" should be more clearly defined.
 3. Subsection 1(g) defines the term "Convenience Store" as designating a retail outlet for "(i) Food, Food Items, Food Byproducts, and (ii) Gasoline, or other petroleum products." In my opinion, this definition is confusing and eccentric in that it fails to accord with the accepted perception of a convenience store as "a retail store that carries a limited selection of basic items, as packaged foods and drugstore items, and is open long hours for the convenience of shoppers." Random House Webster's Unabridged Dictionary (2d. ed. 1999). Under your proposed definition, even a Sam's Supercenter would probably qualify as a "convenience store" — a conclusion I doubt was intended and one that the voters would be unlikely to appreciate without clarification.
 4. Subsection 1(h) is confusing in designating January 1, 2002 as the reference date for determining what qualifies as a "Dry County." Any election on your proposed amendment will not occur until November 5, 2002 and, assuming it is approved, the amendment's effective date will be December 5, 2002. I seriously doubt that you intend to treat as "dry" a county that has voted itself "wet" in the period between January 1, 2002 and December 5, 2002.
 5. In defining "Normal Operating Hours" as hours during which an establishment "is open to the public for business, those hours being determined by the business," subsection 1(k) creates the possibility that even wildly variable hours will be considered "normal," since the term as defined denotes only the period during which an owner elects to operate on any given day. The potential variability built into this definition is in itself inconsistent with the concept of "normal" and needs to be clarified. It remains unclear in your proposed amendment whether any qualifying facility will have absolute discretion to set and to vary its "normal operating hours" or whether the Board and local authorities will continue to have the authority to dictate closing hours, as they are currently authorized to do pursuant to A.C.A. § 3-9-233. If you mean to proposed that the establishments at issue can trade in alcoholic beverages whenever they choose, possibly including all day and night, seven days a week, you need to say so more directly. This ambiguous use of the phrase "normal operating hours" appears at various points in your proposed amendment and must be clarified throughout to enable me accurately to summarize your measure in a ballot title.
 6. In subsection 1(l), it makes no sense to define a "Closed Container" as a "sale." A container is a vessel, not a commercial transaction.
 7. Subsection 1(n) is confusing in defining "New Taxes" as applying only to taxes imposed by the state of Arkansas. If you do not intend your restriction to apply to taxes imposed by local units of government, you should say so directly.
 8. For reasons set forth in paragraph 4 above, subsection 1(n) is further confusing in designating January 2, 2002 as the reference date. I further fail to understand why you have designated January 1, 2002 the reference date for defining a "Dry County" and January 2, 2002 the reference date for defining" New Taxes."
 9. Subsection 1(o) is confusing for the same reasons set forth in paragraphs 7 and 8 above.
 10. Section 2 is ambiguous and confusing in its reference to "Hotels which own and operate restaurants." As defined in subsection 1(a)(i), a "Restaurant" is a facility "without sleeping accommodations," which raises the question how a sleeping facility like a Hotel could own and run a Restaurant as one aspect of its normal operations. If you intend to refer in this passage only to a "Restaurant" operation of the sort curiously defined at subsection 1(a)(ii) (viz., "a large meeting or attendance facility"), you should clearly state this restriction in the text of your proposed amendment. Your ambiguous use of the phrase "Hotels which own and operate restaurants" appears at various points in your proposed amendment and must be clarified throughout to enable me accurately to summarize your measure in a ballot title.
 11. Section 2 is further ambiguous in that it fails to specify whether the service, sale and consumption of alcoholic beverages by the drink in Hotels will be restricted to food service areas.
 12. Subsection 3(b) is confusing in failing altogether to address either the procedure for applying to receive the referenced permits or any program of inspection and verification preliminary to the issuance of these permits. See A.C.A. § 3-9-232 (authorizing preliminary and subsequent periodic inspections of premises and records). This subsection further fails to explain how the Board can perform its duty to issue permits "with[in] 30 days of the passage of this Amendment" in the absence of enabling legislation and regulations. This same objection applies to subsection 4(b).
 13. The first sentence of subsection 3(c) is confusing in not specifying whether the referenced "Restaurant or Hotel" must be licensed before the terms of the subsection will apply.
 14. The term "enforcement tax" is unclear given the context of subsection 3(c).
 15. The final sentence of subsection 3(c) is confusing in purporting to bar any "governmental agency" from levying transportation fees or taxes. To the extent this proscription might be read as barring the federal government from imposing such fees or taxes, it is misleading and unenforceable.
 16. The term "[n]o additional restrictions" in subsection 3(d) is vague and in all likelihood unduly broad. Literally read, this proscription would prohibit the state from requiring such businesses to obtain business licenses or to observe health regulations — a conclusion I doubt you intend to apply.
 17. I am uncertain whether the tax referenced in section 6 is in addition to or in lieu of the gross receipts and supplemental taxes referenced in A.C.A. § 3-9-213 (Supp. 2001).
 18. Section 6 is further confusing in not specifying how the sales tax proceeds "shall be paid to and dedicated to the Arkansas Department of Human Services." Who collects these proceeds? Into what fund are they to be deposited? Is an appropriation required to authorize their distribution? I am uncertain how to summarize the impact of this language.
 19. Given the context of your proposed amendment, it is unclear whether the term "any Restaurant" in subsection 7(a) refers to "any licensed Restaurant."
 20. The final sentence of subsection 7(b) is confusing in that it appears to dictate as a matter of state constitutional law the application of the federal constitution's commerce clause — an effort inconsistent with the principle that only Congress can regulate interstate commerce. The sentence appears to be no more than surplusage, since it creates no substantive right in addition to that stated in the first sentence of this subsection. I am thus uncertain how to summarize it in a ballot title for your measure.
 21. Subsection 8(a) is confusing in not specifying how the State of Arkansas will go about "placing said [tax] increase(s) on a ballot measure before the voters in a general election." Is the mechanism for approving tax increases proposed in this subsection the same as that proposed in subsection 8(c)? If so, why is this mechanism addressed in two separate subsections? I suspect, but cannot conclude with confidence based on the text of your proposed amendment, that you intend to propose that the legislature must submit any increase in taxes or fees to the voters in a general election unless an immediate need for an increase exists, in which case the legislature must call a special election pursuant to subsection 8(c). Assuming this is your intention, you need to say so more clearly.
 22. Subsection 8(a) is further confusing in designating January 1, 2002 as the date beyond which any tax or fee increase must be approved by the voters. As noted in paragraph 4 above, any election on your proposed amendment will not occur until November 5, 2002 and, assuming it is approved, the amendment's effective date will be December 5, 2002. Your proposed amendment fails to address the possibility that the legislature might increase fees or taxes without voter approval between January 1 and December 5, 2002. I am therefore uncertain as to the effect of your measure on such taxes.
 23. Subsections 8(b) and 8(d) are confusing with respect to proposed new taxes and fees for the same reason that subsections 8(a) and 8(c) are confusing with respect to proposed increases in existing taxes and fees. See paragraph 21 above.
 24. For reasons discussed in paragraph 5 above, I consider the phrase "within the normal operating hours of the establishment" to be ambiguous and confusing as used in subsection 9(a). Given the definition of this term at subsection 1(k), it would appear that any establishment could adopt a practice of selling drinks on Sunday merely by subjectively deciding that Sunday would henceforth constitute" normal operating hours," subject to modification at any point for any or no reason. If this is so, the proviso set forth in subsection 9(a) constitutes no proviso at all and should not be represented as such. Moreover, I am at a loss to determine how one might identify the "normal working hours" of a "large meeting or attendance facility" — a variety of "Restaurant" that presumably accommodates its hours to its clients' needs on an ad hoc basis. If your intention is to authorize any Restaurant or Hotel to serve drinks at any time and at any location within the facility, you should say so directly in your proposed amendment.
 25. Although section 9 appears concerned primarily with the Sunday sale of liquor by the drink, subsection 9(b) could be far more broadly read in directing that "[t]he State may not restrict the hours of operation of a Restaurant or Hotel operating a restaurant. . . ." Again, if your intention is to authorize any Restaurant or Hotel to serve drinks at any time and at any location within the facility, you should say so directly in your proposed amendment.
 26. Subsection 9(b) is further confusing in directing that the state may not "impose any tax, fee or other costs on the sale or service of alcoholic beverages by the drink on Sunday." Is this provision intended to create an exception for Sunday sales to the special 2% tax established by subsection 6(a) of your proposed amendment? Is it intended to exempt Sunday sales from the gross receipts tax and supplemental tax referenced at A.C.A. § 3-9-213? If so, you need to say so directly.
 27. I am unable to interpret the passage in section 10 of your proposed amendment declaring that "[n]o part of the Amendment shall be deemed or construed to conflict with any Federal Statute, Rule or Regulation in effect as of January 2, 2002." As a matter of simple logic, the proposed amendment either does or does not conflict with federal law, and no declaration of state constitutional law can possibly prevent federal law from controlling if the supremacy clause of the U.S. Constitution so dictates.
 28. Your proposed amendment is completely silent on what I consider such crucial matters as the criteria and procedures for suspending or canceling permits, see A.C.A. § 3-9-235 (Supp. 2001), and the nature of unlawful practices by permittees. See A.C.A. § 3-9-236. If you intend to alter or dispense with current law on these issues, you should say so directly in your proposed amendment.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:JHD/cyh