Mr. Frederick N. Scott, Sponsor Little Red Hen Committee Post Office Box 13135 Maumelle, Arkansas 72113
Dear Mr. Scott:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted two similar measures, which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2007-287 and 2006-118. You have made changes in the text of your proposal since your last submission and have now submitted the following proposed popular name and ballot title for my certification:
 Popular Name LOCAL TERM LIMITS AMENDMENT Ballot Title AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF ARKANSAS LIMITING THE LENGTH OF TERMS OF OFFICE AND THE NUMBER OF TERMS OF OFFICE FOR ALL ELECTED COUNTY AND CITY OFFICES. OFFICES THAT ARE ADMINISTRATIVE IN NATURE, SUCH AS MAYOR, COUNTY JUDGE, ASSESSOR, COLLECTOR, CLERK, TREASURER, OR SHERIFF ARE LIMITED TO TWO, FOUR YEAR TERMS. *Page 2 
 OFFICES THAT ARE LEGISLATIVE IN NATURE, SUCH AS JUSTICES OF THE PEACE OR ALDERMAN ARE LIMITED TO THREE, TWO YEAR TERMS.
 SCHOOL BOARDS, COMMISSIONS, TOWNSHIP OFFICES, PROSECUTORS AND COURTS ARE NOT AFFECTED.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure. In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000); Donovan v. Priest,326 Ark. 353, 931 S.W.2d 119 (1996); and Plugge v. McCuen, 310 Ark. 654,841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment. See Arkansas Women'sPolitical Caucus v. Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or *Page 3 
include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. Additions or changes to your popular name and ballot title may also be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and *Page 4 
certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 4 of your proposed amendment states:
 Persons appointed to an elective office may only finish out the term of the office, and may not succeed themselves in office.
 As an initial matter, I note that this provision does not specify the offices included in the term "elective office," (although the previous section refers to county and city elective offices and states that schools boards, commissions, township offices, courts and prosecutors are not affected by the amendment.) It may be necessary to apprise voters of the precise offices in question in a ballot title for your measure, to avoid uncertainty and confusion. I am unable, however, to do so based upon this language.
 Additionally, although you have modified Section 4 somewhat, compare Op. Att'y Nos. 2007-287 and 2006-118, I believe an ambiguity remains as to how this provision would interact with Amendment 29 to the Arkansas Constitution, which also governs the filling of vacancies in some of the offices included in your measure. Section 4 of Amendment 29 governs how long an appointee serves. It provides as follows:
 The appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next General Election if no vacancy had occurred. If such office would not in regular course be filled at such next general election the vacancy shall be filled as follows: At the next General Election, if the vacancy occurs four months or more prior thereto, and at the second General Election after the vacancy occurs if the *Page 5 
vacancy occurs less than four months before the next General Election after it occurs. The person so elected shall take office on the 1st day of January following his election.
 Amendment 29 thus deals with the term lengths of appointees to fill vacancies in the elective offices covered by Amendment 29. Under Amendment 29, the length of time to be served by the appointee depends upon whether the office would ordinarily be filled at the next general election following the occurrence of the vacancy. Your measure on the other hand states that an appointee "may only finish out the term of the office." This would mean, at least in circumstances where the appointment occurred so late in the election cycle that no one else was elected, that the appointee would only serve until December 31. This in turn would leave a possible vacancy, since your measure does not authorize the appointee to hold over until the next election cycle. Compare Ark. Const. art. 19, § 5
("All officers shall continue in office after the expiration of their official terms, until their successors are elected and qualified."). Would another vacancy be created in that instance? This is potentially confusing to voters, and I cannot summarize its effect in a certified ballot title for your measure.
 An additional ambiguity exists from the possibility that this language in Section 4, ("persons appointed . . . may only finish out the term of the office," emphasis added) means that the appointee is never eligible for election to the office after having served as an appointee. I realize that Section 4 also states that "persons appointed . . . may not succeed themselves." This might suggest that one who had served as an appointee could later be elected to that office, as long as he was not succeeding himself. But the statement that appointees "may only finish out the term of the office" is nevertheless ambiguous.
 As a final matter regarding Section 4, it is also unclear whether the period served by an appointee would count against the term limit applicable to that office. *Page 6 
 2. An additional ambiguity arises from Section 5 of your measure, which provides:
 Persons holding office at the time this Amendment goes into effect, who meet or exceed the maximum number of years in office so provided, may continue in office until the end of the year following the next General Election, and their successor is elected and qualified.
 It is not entirely clear from this language whether an office holder who has met or exceeded the maximum number of years on the amendment's effective date will complete the current term in all instances, or whether the term of some officers might be cut short by your measure. The uncertainty arises from the statement that the person "may continue in office until the end of the year following the next General Election." An example will illustrate the possible ambiguity. If the measure is adopted at the November, 2008 general election, it will be effective on January 2, 2009 (see Section 6). The next general election will be November, 2010. Under one possible reading of Section 5, "the end of the year following [the November, 2010 general election]" is December 31, 2011. I realize that you may intend for December 31, 2010 to be the operative date, but that is by no means clear from the language of Section 5. Instead, it is possible that persons covered by this provision will continue in office until December 31, 2011. Because some current offices holders may have been elected to four-year terms, (see, e.g., A.C.A. § 14-43-303, regarding aldermen in mayor-city council cities of 50,000 or more), this will shorten the term. The question then arises as to how this person's successor is to be elected, since a successor ordinarily would not be elected in that case until November, 2012. Will a vacancy be created in that instance? Will enabling legislation be necessary to provide for the election of a successor? How long will the successor serve? *Page 7 
 3. The retroactive effect of your measure remains unclear, in my view. Section 6 states:
 This Amendment to the Arkansas Constitution shall take effect and be in operation on January 2, in the year following its adoption; and its provisions shall be applicable to all persons thereafter seeking to hold the offices specified in this Amendment.
 My predecessor's analysis of previous similar language continues to apply to this provision. He stated:
 As an initial matter, the retroactive effect of your measure is not clear. Your measure is effective January 2, 2007 and is applicable to "all persons thereafter seeking election. . . ." Do previously-served terms of office (served previous to January 2, 2007), count against the three-term limit? I cannot determine from the language used. Cf. U.S. Term Limits, Inc. v. Hill, 316 Ark. 251, 274, 872 S.W.2d 349 (1994) (noting that Arkansas Constitution, Amendment 73 proclaims that it is "applicable to all persons thereafter seeking election" and that "it is simply not clear on when counting the terms must commence.")
 Op. Att'y Gen. 2006-118.
 In my view, this ambiguity has not been clarified by your current submission. I also note in this regard that while Section 5 (discussed above) implies retroactivity, Section 6 implies non-retroactivity by stating that the amendment "shall be applicable to all persons thereafter seeking to hold the offices specified. . . ." (Emphasis added). This may also be confusing to voters.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory *Page 8 
mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General