Mrs. Jean McClellan-Chambers Founder Coordinator Arkansas Voters' Right of Recall
1305 Southridge Court Fort Smith, Arkansas 72908
Dear Mrs. McClellan-Chambers:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name ARKANSAS VOTERS RIGHT OF RECALL INITIATIVE Ballot Title THE ARKANSAS VOTERS RECALL INITIATIVE IS TO STRENGTHEN AND EXTEND THE ARKANSAS STATUTE PROCESS BY WHICH THE REGISTERED VOTING CITIZENS OF ARKANSAS, FOR GOOD CAUSE, ARE AFFORDED THROUGH A PETITION METHOD, THE LEGAL PROCEDURAL ABILITY TO HOLD OUR ELECTED OFFICIALS TO A HIGHER STANDARD, CALL TO PUBLIC KNOWLEDGE ANY EGREGIOUS WRONG DOING THEN POTENTIALLY REPEAL SAID ELECTION OF A COUNTY, STATE OR FEDERALLY ELECTED OFFICIAL, WHICH IS A FUNDAMENTAL RIGHT GRANTED TO ALL CITIZENS UNDER THE U.S. CONSTITUTION. THIS INITIATIVE SHALL *Page 2 
EXTEND THIS RIGHT TO ALL REGISTERED VOTERS OF THE STATE OF ARKANSAS THROUGH A DEFINED ELECTORAL PROCESS. UPON MAJORITY OF VOTERS DEFINED AS FIFTY-ONE PERCENT (51%) AGREEING TO THE PASSAGE OF THIS INITIATIVE AND IT'S [SIC] SUBSEQUENT ADOPTION, THIS MEASURE SHALL BE MADE AVAILABLE FOR CITIZEN USAGE AND EFFECTIVE AS OF 01 JANUARY 2011.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular nameand ballot title reflects my view of the merits of the proposal.This Office has been given no authority to consider the merits ofany measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353,931 S.W.2d 119 (1996); and Plugge v. McCuen, 310 Ark. 654,841 S.W.2d 139 (1992). The purpose of my review and certificationis to ensure that the popular name and ballot title honestly,intelligibly, and fairly set forth the purpose of the proposedamendment or act. See Arkansas Women's Political Caucus v.Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). *Page 3 
The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417,316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219, 223,226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed."Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990);Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring.Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law.Christian Civic Action Committee v. McCuen, 318 Ark. 241,884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v.Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed initiated act, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title. The ballot title fails to summarize the proposed measure and is therefore deficient on that basis. It refers generally to a "petition method" and a "defined electoral process," without any substantive information regarding the measure. This fails to meet the standards set by the court. As noted above, the ballot title must include an "impartial summary of the proposed . . . act that will give the voter a fair understanding of the issues presented." Hoban, supra. Your proposed ballot title contains no such summary, nor is it "impartial." To the contrary, it contains partisan language, contrary to the court's dictates. I am referring in this regard to the words "strengthen," "good cause," "higher standard," "egregious wrongdoing" and "fundamental right." *Page 4 
These words give "partisan coloring to the merit of the proposal," also contrary to the above standards that will guide the court's review in the case of a ballot title challenge. Chaney,supra.
In resubmitting this measure, you may wish to review previous opinions of this office certifying the popular names and ballot titles for various proposed measures. They are searchable on the Office of Attorney General website:http://www.arkansasag.gov/opinions/. This should be of assistance with regard to the usual form and substance of approved popular names and ballot titles.
I must note, additionally, that your proposed initiated act contains a number of ambiguities that prevent it from being fully and correctly summarized for the electorate in a popular name and ballot title. I have no constitutional role in the shaping or drafting of the text of your measure. You should be aware, however, that where the effects of the proposed measure on current law are unclear or ambiguous, it will be impossible to develop a satisfactory popular name and ballot title. I am unable for this reason to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. An initial question arises concerning what appears to be a preamble or introduction to the proposed initiated act. It is unclear whether you intend for this to be part of the measure itself. The introductory statement, i.e., "To be included within the appropriate sections of the Arkansas Code Annotated," suggests that what follows is part of the text. But this is not entirely clear. You are required, pursuant to A.C.A. § 7-9-107(a), to submit the "original draft" of the petition to my office. Regarding the form of the petition, A.C.A. § 7-9-104 states that the petition shall include the "full text of the measure proposed." The "full text" must therefore be clearly set forth in your submission.
 I must also note in this regard that the statements concerning the cited recall statutes are inaccurate in several respects. For instance, contrary to the statement that "[n]o specific grounds are required," both A.C.A. § 14-47-112 and A.C.A. § 14-61-119 *Page 5 
require "a statement of the grounds and reasons on account of which the removal is sought." Additionally, A.C.A. §§ 14-48-114 and 14-61-119
refer to "the preceding general" election, rather than the "primary" election. If this introductory language is intended to be part of the text to be voted on by the electorate, these discrepancies must be clarified before the language can be properly summarized in a ballot title for your proposed measure.
 2. Section I of the proposed measure states that "[a]ny elected public official, whether such position be for County, the State of Arkansas or the US [sic] Congress, shall be removed from office by a recall election carried out under this subsection." As an initial matter, your measure as it applies to members of Congress is unconstitutional because a state statute cannot alter the terms or qualifications for members of Congress. The qualifications for service and removal of members of Congress are contained in the U.S. Constitution. Only the Senate can remove members of Congress. E.g., Cook v. Gralike, 531 U.S. 510, 522 (2001); U.S. Term Limits, Inc v. Thornton, 514 U.S. 779, 831, 832-35 (1995); Burton v. United States, 202 U.S. 344, 369 (1906).
 The measure does not define the term "elected public official." It appears to be your intent to cover county, state, and congressional offices, but it is unclear which precise officials are covered. The uncertainty is compounded by the introductory reference to "any public official." While Section III of the measure contains a reference to "statewide" and "countywide" office, uncertainty nevertheless arises from Section I's reference to "any elected public official . . . for County, the State of Arkansas. . . ." In addition to the syntactical problem with this language, it is unclear whether the measure extends to state judicial officials or prosecuting attorneys who are elected by judicial circuit. There may also be some question whether the measure applies to justices of the peace or constables, who are sometimes viewed as county officials even though they are not elected countywide. In sum, requiring voters to deduce the covered officials is not, in my opinion, sufficient to apprise them of the issue they are being asked to approve. It may be necessary *Page 6 
to apprise voters of the precise covered officials in a ballot title for your measure, but this cannot be done without clarification of these ambiguities.
 3. Additional ambiguities arise under Section I regarding the "grounds for recall." Pursuant to Section III, a recall petition "shall state the grounds for cause of initiated recall action. . . ." This plainly has reference to the grounds outlined in Section I. But it is unclear whether any other procedures or requirements apply in connection with the stated grounds. In particular, it is unclear whether your proposed measure contemplates any review of (1) whether the petition has stated the cause for removal with sufficient detail, or (2) whether there are sufficient facts to show, in the words of the measure, "proof" of the cause for removal, or (3) both. It is also unclear whether a petition must, for example, in addition to stating "lack of fitness" as grounds for recall, include one or more of the specific grounds or elements listed under the definition of that term. The measure includes no express procedure for a review of grounds stated in a recall petition; but some procedure might be implied by the appearance of such terms as "proof" (see Section I (1)(a)(v)) and "evidence," id. at (5)), along with the various references to legal standards that ordinarily involve review by a court. For example, Section I (2)(a) refers to a "standard of reasonable care" and "negligence" when defining "incompetence," and Section I (3)(a) includes a "reasonable person" standard under "neglect of duty."
 I note additionally in this regard that according to Section II, "[a] recall election may be initiated by prescribed standards for such petitions under this subsection which has to meet the Secretary of State's requirements for such petitions." (Emphasis added.) Yet there is no other mention of these "standards" and "requirements." An ambiguity therefore exists as to the precise authority of the Secretary of State, and more particularly whether the Secretary of State has any role in determining whether sufficient grounds have been stated in the petition. *Page 7 
 These matters are critical to the measure's fundamental operative petition procedure, but without resolution of these ambiguities they cannot be properly reflected in the ballot title. The significance of disclosing these matters to the voter in a ballot title for this measure is further highlighted by the requirement in Section III that a "challenged official . . . immediately cease acting in any official capacity [i.e., be under suspension]" "[u]pon certification of sufficient signatures to activate a recall process. . . ." The immediate suspension of an elected public official is undoubtedly an issue that would cause serious ground for concern in the mind of a reasonable voter. Consequently, the precise purpose and effect of stating grounds for initiating a recall action must, in my view, be disclosed in a ballot title for your proposed measure. Without the resolution of the foregoing ambiguities, however, a fair and complete summarization of the measure is impossible
 Regarding the grounds themselves, I note that the definitions are extremely open-ended, including as they do "any reasonable legal definition" or "defined standard" or "legally accepted definition," as well as "any actions perceived to meet the civil standard of malfeasance, [etc.]." The definitions are also vague in several respects. For example, subsection (6) refers to "[e]vidence which meets the standard of Civil Procedure of illegality. . . ." I do not know what "standard" this refers to. The open-ended nature of the definitions further highlights the importance of clarity concerning the grounds' purpose and effect.
 Additionally, the term "reserved" under the various definitions is ambiguous, and of doubtful enforceability. It is unclear how you intend for this portion of the definitions to be expanded upon. I note that the measure seems to purport to be self-executing, and therefore does not seem to contemplate the authority of the General Assembly to flesh out these matters. The meaning and effect of the term "reserved" must therefore be clarified for proper inclusion in the ballot title. *Page 8 
 4. Section II states in part that "[a] recall election may be initiated . . . in the advent of immediate need for emergency action, by a two-thirds vote of the members of the legislature as prescribed in the Arkansas Constitution of 1874." (Emphasis added.) This provision presumably has reference to Arkansas Constitution Article 5, section 1, which provides for the General Assembly's enactment of an "emergency measure" upon a two-thirds vote. Assuming Section II contemplates a "measure" governed by Ark. Const. art. 5, sec. 1, then it will be "necessary . . . to state the fact which constitutes such emergency. Id. (under "Emergency"). I am uncertain, however, what guides the legislature's determination whether there is an "immediate need for emergency action" as contemplated by your proposed measure. Because this may give the voter serious ground for reflection, this aspect of your measure must be adequately summarized in the ballot title.
 5. Section III vests certain powers and duties in "the Supervisor of Elections, a division of the Secretary of State's Office." According to my research, there is no such position under current law. If it is your intention to create such a position, I believe this must be clarified for proper reflection in the ballot title, given the considerable responsibility and authority attending this position under the terms of your measure.
 Several ambiguities also arise under this section in connection with signature gathering and the sufficiency determination. Section III states that the sponsors have 180 days to gather sufficient signatures, but it is unclear when the 180-day period commences. Additionally, the term "expeditiously" in connection with the Supervisor of Elections' responsibility to verify signatures is vague. These matters would likely be significant in the mind of the voter, but cannot be summarized in a ballot title unless the text is clarified.
 6. Section IV contains three subsections addressing the scheduling of the recall election. Because the term "area of representation" under subsection 1 could be used to refer to an official who *Page 9 
serves "statewide," it is unclear whether subsection 2 adds anything to the provision. An additional ambiguity centers on subsection 3's reference to the "Supervisor of Elections governing the region in question." As previously noted, the "Supervisor of Elections" reference is unclear; and I am unaware of any such position governing a region. Clarification of this ambiguity is particularly important in light of the Supervisor's "ultimate authority" under subsection 3 to schedule the election. This appears to vest the Supervisor with unfettered discretion to set the election.
 While the Supervisor's broad authority in this regard seems clear, I note that there is no mention of who conducts the election and certifies the results, or what governmental entity incurs the election expense. These matters may be of significant concern to the voter, but without textual clarification I am unable to determine the intent and therefore cannot summarize this provision in a ballot title.
 7. Section VI purports to give the Governor "provisional responsibility" to appoint a "temporary replacement." I am uncertain as an initial matter whether the Governor's responsibility in this regard applies only when an official is removed from office after a recall election or whether it is also triggered by the official's suspension pursuant to Section III. The wording of this section presents several other problems of interpretation, but I find it unnecessary to address these ambiguities because the section is contrary to law, in my opinion. The Governor has the power, pursuant to Ark. Const. Amend. 29, § 1, to fill vacancies in all elective state offices; and the Quorum Court has the power, pursuant to Ark. Const. Amend. 55, § 4, to fill vacancies in elective county offices. If a state or county official is removed from office as a result of a recall election under your proposed measure, it seems clear that a vacancy will arise, to be filled in accordance with these constitutional provisions. Your proposed initiated act cannot alter this constitutional appointive authority or otherwise amend these constitutional provisions. *Page 10 
 8. Section VII is also contrary to law, in my opinion. This section addresses legislative action to "repeal" the "process" enacted by your proposed initiated act, and states that this cannot occur "by any simple legislative procedure or action unless resubmitted to the citizens of Arkansas for popular referendum. . . ." Although it is a little unclear, I assume that "any simple legislative procedure" means legislative action by a simple majority vote. This might be in recognition of the fact that the General Assembly can amend or repeal an initiated measure by a two-thirds vote, pursuant to Ark. Const. art. 5, § 1 (see "Amendment and Repeal" under "General Provisions.") The important point for purposes of your proposed measure, however, is that the constitution ordinarily prohibits the General Assembly from referring matters to the people for their approval or rejection at an election, except for constitutional amendments. This prohibition is contained in Ark. Const. art. 5, § 1 ("Majority" under "General Provisions") as follows:
 This section shall not be construed to deprive any member of the General Assembly of the right to introduce any measure, but no measure shall be submitted to the people by the General Assembly, except a proposed constitutional amendment or amendments as provided for in this Constitution.[1]
 (Emphasis added.)
 Section VII of your proposed initiated act is therefore contrary to Ark. Const. 5, § 1, in purporting to recognize some right in the General Assembly to submit a measure to the people proposing the repeal of the enacted "process." The General Assembly can effect such a repeal by a two-thirds vote; and the people can propose an amendment or repeal through an initiated measure. *Page 11 
 But the General Assembly cannot constitutionally resubmit the measure to the people for a vote.
The foregoing discussion of potential problems in the text of your proposed measure is not intended to be exhaustive. However, the ambiguities and uncertainties discussed above preclude the effective summarization of your proposal in a ballot title that adequately advises the electorate of the measure's provisions and the effects. These are questions of extreme importance to the administration of state and local government and in my opinion will give the voter serious ground for reflection. I cannot summarize your proposal to the voters, however, without clarification of the ambiguities. I am reluctant, moreover, to interject my own interpretation of your measure on these points into a ballot title or popular name given my uncertainty as to the precise underlying assumptions. These questions must be addressed in your measure and ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. As stated above, I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen, 303 Ark. 418,793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities. *Page 12 
I reiterate that I do not purport to have set out an exhaustive list of possible problems with the proposed measure. For this reason, I recommend that you consult with legal counsel of your choice, or with a person who is skilled in the drafting of legislation to ensure that there are no ambiguities or problems of implementation. Initiating a measure of this nature is a matter of the utmost seriousness, and the Arkansas Supreme Court holds popular names and ballot titles of proposed initiated acts to a standard that is commensurate with this seriousness. Accordingly, I must be diligent in my duty to assure that the popular names and ballot titles that I certify meet the court's high standard. The standard cannot be met, however, if the text of the measure is unclear or uncertainties remain. That is why I suggest that you seek assistance in evaluating your text, bearing in mind that my ability to certify a popular name and ballot title depends upon the clarity of the language of the amendment.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed measure, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The General Assembly's power to propose constitutional amendments for the people's adoption or rejection is found at Arkansas Constitution, art. 19, § 22. *Page 1