Mr. Michael Wasserman, Sponsor Arkansas Hotels Entertainment, Inc. 391 CR 214 Gainesville, Texas 76240
Dear Mr. Wasserman:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have submitted seven previous popular names and ballot titles for similar measures, four of which I rejected in Ops. Att'y Gen. Nos. 2009-010, 2006-053, 2006-037 and 2006-009, due to unresolved ambiguities in the text of each measure. This office certified three of your submissions, as evidenced by Op. Att'y Gen. Nos. 2009-214, 2009-045 and 2006-046. You have since elected to make changes to your measure and have submitted a revised popular name and ballot title for my certification.
Your proposed popular name and ballot title state as follows:
 Popular Name AN AMENDMENT TO ALLOW ARKANSAS HOTELS AND ENTERTAINMENT, INC. TO OWN AND OPERATE SEVEN CASINO GAMING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES *Page 2 Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION:
 1) AUTHORIZING SEVEN CASINO GAMING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS HOTELS AND ENTERTAINMENT, INC." (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES;
 2) PROHIBITING THE GENERAL ASSEMBLY AND ANY POLITICAL SUBDIVISION OF THIS STATE FROM ENACTING ANY LEGISLATION, RULES OR REGULATIONS REGARDING CASINO GAMING;
 3) PROHIBITING CASINO GAMING AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS HOTELS AND ENTERTAINMENT, INC.;
 4) PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PARTICIPATING IN CASINO GAMING;
 5) REQUIRING THAT THE GROSS GAMING REVENUE (AS DEFINED) OF EACH CASINO SHALL BE SUBJECT TO THE GROSS RECEIPTS TAX LEVIED BY THE TAXING JURISDICTIONS WHERE A CASINO IS LOCATED AT THE SAME RATE AS FOR BUSINESSES GENERALLY. THE GENERAL ASSEMBLY IS DIRECTED TO APPORTION THE SUMS PAID TO THIS STATE AS TAX REVENUES IN A MANNER TO ATTEMPT TO REDUCE OR ELIMINATE THE STATE'S GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE. THE AMOUNT OF GROSS RECEIPTS TAX COLLECTED BY THE STATE FOR TAXING JURISDICTIONS OTHER THAN THE STATE SHALL BE RETURNED TO THOSE JURISDICTIONS;
 6) FURTHER REQUIRING THAT THE GROSS GAMING REVENUE (AS DEFINED) OF EACH CASINO SHALL BE SUBJECT TO AN ADDITIONAL TAX AT THE RATE OF FIVE PERCENT (5%) WITH THE TAX TO BE PAID TO THE *Page 3 
STATE'S GENERAL REVENUE FUND ACCOUNT OF THE STATE APPORTIONMENT FUND. THE GENERAL ASSEMBLY IS DIRECTED TO APPORTION THESE TAX REVENUES AS FOLLOWS: SEVENTY PERCENT TO THE ARKANSAS STATE HIGHWAY AND TRANSPORTATION DEPARTMENT; AND THIRTY PERCENT TO THE ARKANSAS DEPARTMENT OF HUMAN SERVICES FOR USE IN ITS SERVICES FOR AGING PERSONS;
 7) PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, GROSS GAMING REVENUES, OR INCOME OF ARKANSAS HOTELS AND ENTERTAINMENT, INC., DERIVED FROM OR USED IN CASINO GAMING EXCEPT AS LEVIED AGAINST BUSINESSES GENERALLY;
 8) ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY;
 9) ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOL BEVERAGE CONTROL BOARD REGULATIONS;
 10) PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW;
 11) RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE;
 12) DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THIS AMENDMENT BUT NOT OTHERWISE REPEALING, SUPERSEDING, AMENDINGOR [SIC] OTHERWISE AFFECTING AMENDMENTS 84 (BINGO) AND 87 (STATEWIDE LOTTERY) TO THE ARKANSAS CONSTITUTION. *Page 4 
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certificationnor rejection of a popular name and ballot title reflects my view ofthe merits of the proposal. This Office has been given no authorityto consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000);Donovan v. Priest, 326 Ark. 353, 931 S.W.2d (1996);Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensurethat the popular name and ballot title honestly, intelligibly, andfairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere,282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id. *Page 5 
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v.McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,supra. The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen,303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities: *Page 6 
 1. Section 2.2 of your proposed measure provides as follows:
 Requiring that the Gross Gaming Revenue of each casino shall be subject to the gross receipts tax levied by the taxing jurisdictions where a casino is located at the same rate as for businesses generally. The General Assembly is directed to apportion the sums paid to this State as tax revenues in a manner to attempt to reduce or eliminate the State's gross receipts tax on food purchased in a retail food store. The amount of gross receipts tax collected by the State for taxing jurisdictions other than the State shall be returned to those jurisdictions. Any tax surplus paid to the State shall be returned to the General Revenue Fund Account of the State Apportionment Fund[.]
 Section 2.2 of your proposed measure differs in one crucial respect from the corresponding section of your previous submission, which I approved subject to certain minor revisions to the proposed ballot title. Specifically, your current submission omits the following provision set forth in your previous submission: "The total amount of said tax [the gross receipts tax on gaming revenues] shall be paid to the State's General Revenue Fund Account of the State Apportionment Fund." Your current submission not only fails to include this provision, it fails altogether to specify where tax revenues will be deposited. The only hint you offer is the closing directive that "[a]ny tax surplus" — an amount that presumably comprises revenues not returned to other states and not used to offset the gross receipts tax on "food purchased in a retail food store" — "shall be returned to the General Revenue Fund Account of the State Apportionment Fund. (Emphasis added.) Although the emphasized term obliquely suggests that the tax revenues at issue will be deposited into the General Revenue Fund Account of the State Apportionment Account, this conclusion is not explicit and clarification is consequently warranted. *Page 7 
 Section 2.2 is further ambiguous in its directive that the legislature "apportion the sums paid to this State as tax revenues in a manner to attempt to reduce or eliminate the State's gross receipts tax on food purchased in a retail food store." The recited formulation is ambiguous in that it fails to specify precisely how this attempted reduction in gross receipts tax on retail food purchases will be accomplished. During the first year of tax collections, for instance, it is unclear how — or, for that matter, if — the state might offset taxes realized from casino revenues against taxes realized from retail food sales. Before the rate of taxation on food purchases can be reduced or eliminated, it would appear that the state would need to be able to estimate likely offsetting revenues from casino operations in the following year. Making such an estimate may well entail collecting at least one year's revenues on casino operations, thereby enabling the legislature to determine how much the retail-food tax could reasonably be lowered. To the extent that your proposal might entail the imposition in at least one year of both a tax on casino operations and an unreduced tax on retail food sales, a voter might have a serious ground for reflection in considering your proposal. This possibility should accordingly be communicated to the prospective voter.
I cannot begin to certify a ballot title for your proposed amendment in the face of the ambiguities noted above. You must remedy these confusing and ambiguous points before I can perform my statutory duty.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. *Page 8 
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen, supra. Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1